---

E. J. LAVINO & CO. v. UNITED STATES. O. G. HEMPSTEAD & SON v. SAME. J. H. HAMPTON, JR., & CO. v. SAME.

(Circuit Court, E. D. Pennsylvania. May 11, 1909.)

Nos. 160, 162, 182 (2,020–2,022).

CUSTOMS DUTIES (§ 44*)—CLASSIFICATION—FERRO ALLOYS—"UNWROUGHT METALS."

　　Proof that the alloys ferro-chrome, ferro-tungsten, and ferro-vanadium have been experimentally wrought does not sufficiently show them to be capable of being wrought to enable them to be classified as "unwrought metals" under Tariff Act July 24, 1897, c. 11, § 1, Schedule C, par. 183, 30 Stat. 166 (U. S. Comp. St. 1901, p. 1645). Those alloys are dutiable by similitude as ferro-manganese under paragraph 122, 30 Stat. 159 (U. S. Comp. St. 1901, p. 1636).

　　[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 44.*

　　For other definitions, see Words and Phrases, vol. 8, p. 7221.]

On Application for Review of a Decision by the Board of United States General Appraisers.

The decision below is reported as G. A. 6,755 (T. D. 28,948).

Thomas Leaming and William M. Stewart, Jr. (George J. Harding, on the brief), for Lavino & Co. and Hempstead & Son.

Walter Evans Hampton, for Hampton & Co.

Everit Brown and Charles Fuller, Sp. Asst. U. S. Attys. (J. Whitaker Thompson, U. S. Atty., and Jasper Yeates Brinton, Asst. U. S. Atty., on the brief).

HOLLAND, District Judge. Between July 19, 1906, and June 19, 1907, the appellants imported through the port of Philadelphia certain merchandise known as "ferro-tungsten," "ferro-chrome," and

"ferro-vanadium," upon which the collector assessed a duty at the rate of 20 per cent. ad valorem under the provisions of paragraph 183 of the tariff act of 1897 (Act July 24, 1897, c. 11, § 1, Schedule C, 30 Stat. 166 [U. S. Comp. St. 1901, p. 1645]), which reads as follows:

"183. Metallic mineral substances in a crude state, and metals unwrought, not specially provided for in this act, twenty per centum ad valorem; mozanite sand and thorite six cents per pound."

Protests were duly filed against this classification and assessment by the importers, and claim was made by them that the merchandise in each case, because of its similitude to ferro-manganese and ferro-silicon, was properly dutiable at $4 per ton under paragraph 122, by virtue of the similitude clause of section 7 of the tariff act of 1897.

Paragraph 122 is as follows:

"Iron in pigs, iron kentledge, spiegeleisen, ferro-manganese, ferro-silicon, wrought and cast scrap iron and scrap steel four dollars per ton."

Section 7 of the tariff act containing the similitude clause reads as follows:

"That each and every imported article, not enumerated in this act, which is similar, either in material, quality, texture, or the use to which it may be applied, to any article enumerated in this act as chargeable with duty, shall pay the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned."

This identical question has been passed upon by the courts in the Second circuit. These same three ferros were before the courts there, and the Circuit Court of Appeals in the case of Roessler & Hasslacher Chemical Co. v. Peterson, 134 Fed. 789, 67 C. C. A. 295, held that ferro-tungsten, ferro-chrome, and ferro-vanadium, like ferro-manganese, are employed as alloys in making steel, which so resembles ferro-manganese that even experts are unable to tell them apart, and which are similar in quality and use to ferro-manganese, though they produce different results, and are not applied at the same stage in the process of making steel, and are, by virtue of the similitude clause in section 7 of the tariff act of July 24, 1897, dutiable at the rate applicable to the ferro-manganese under paragraph 122 of the said act.

It was urged in that case that these ferros should be classified as metals unwrought under paragraph 183, but the court held that "unwrought" implies a metal which is capable of being wrought, and not a substance fit only to be used with other ingredients to produce an entirely different and distinct product, and that ferro-chrome, ferro-tungsten, and ferro-vanadium, used only in imparting certain qualities to steel and incapable of being themselves wrought into any useful article, are not within said provision.

It is now contended that in the case at bar the facts are entirely different from those upon which the Roessler Case was decided, in that it is now shown by the proofs that these ferros are capable of being themselves wrought. The testimony of two witnesses was offered to show that these ferros are "malleable," and can be "changed" in "shape by forging." One of the expert witnesses, however,

stated that his experiments were a failure with ferro-tungsten, but after he had cast ferro-chrome in a furnace in the shape of a slab, a piece of which had been planed by a planing machine, he had given the same to a blacksmith, "who forged it up in  *  *  *  shape by hammering." The other witness, who was also an expert, testified that he had some success in his experiments with ferro-tungsten, although neither of these articles made by them are manufactured for commercial purposes, but were only produced as an experiment for the government in this case.

We do not think the proof of these experiments is sufficient to warrant a different classification, nor should the other reasons urged prevail in view of the decision of the Circuit Court of Appeals in the Second circuit in the Roessler Case, supra. These articles of importation were not before the court in the Third circuit in the case of Cramp v. U. S. (C. C.) 139 Fed. 303, and we cannot agree with the Board of General Appraisers that the decision in the latter case is controlling in the classification of these three ferros, when it is remembered that they were specifically passed on in the Roessler Case, and for the sake of uniformity the decision in the latter should be followed. The practical result of a different conclusion in this regard would require importers through the port of Philadelphia to pay as much as $850 a ton on vanadium, $450 a ton on tungsten, and $160 a ton on chrome. The same articles could be imported through the port of New York at $4 a ton. This should not be permitted, unless it clearly appears there was an error in the classification of these articles in the Second circuit, and we are not convinced there was. For the reasons stated in the Roessler Case, we think that ferro-vanadium, ferro-tungsten, and ferro-chrome should have been classified and assessed under paragraph 122 of the tariff act of 1897 at $4 a ton.

The decision of the Board of General Appraisers is therefore reversed.